UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| REBECCA WATSON-MILLER, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT MCDONALD, SECRETARY OF VETERANS AFFAIRS; <br><br> Defendant. | 4:14-CV-04112-LLP <br><br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL <br><br> DOCKET NO. 28 |

**INTRODUCTION**

This matter is pending before the court on plaintiff Rebecca Watson-Miller's amended complaint alleging claims of discrimination, harassment, hostile work environment, constructive discharge, and retaliation against the Department of Veterans Affairs, plaintiff's former employer.  See Docket No. 9. Ms. Watson-Miller has filed a motion for an order compelling defendant Robert McDonald, the Secretary of Veterans Affairs ("VA"), to produce certain discovery.  See Docket No. 28.  The district judge, the Honorable Lawrence L. Piersol, referred Ms. Watson-Miller's motion to this magistrate judge for a decision.  See Docket No. 38.

**FACTS**

Ms. Watson-Miller, now a 60-year old woman, was hired in June, 2007, by the VA as a psychologist in the Mental Health Service Line in the VA facility

in Sioux Falls, South Dakota.  She remained in the position of a clinical psychologist for the duration of her employment with the VA until she resigned April 3, 2013.  From 2008 to 2012, Dr. Jerry Buchkowski was Ms. Watson-Miller's supervisor.  Dr. Kyle Lythgoe supervised Ms. Watson-Miller in 2012 and 2013.  Dr. Buchkowski reported to Dr. Victor Waters, Chief of Staff.

Ms. Watson-Miller claims she was denied opportunities for training, for additional job duties and a supervisory job; that she was given an unequal work load; denied leave requests; and that her job duties were interfered with.  Ms. Watson-Miller claims the VA's actions were discriminatory as to her age and disability.  Her disabilities consist of degenerative joint disease, bilateral chondromalacia of the patella, interstitial markings in both lungs, pulmonary fibrosis, depression, anxiety, and diabetes.  In her amended complaint, Ms. Watson-Miller alleges claims of:

(1)     discrimination and harassment under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a and 42 U.S.C. § 2000e-16(a);

(2)     discrimination and harassment under the Americans with Disabilities Act (ADA), 29 U.S.C. § 791 and 42 U.S.C. §§ 1981a(a)(2) and 12117(a);

(3)     retaliation under 29 U.S.C. § 523 and 42 U.S.C. § 12203;

(4)     retaliation under 42 U.S.C. §§ 2000e-3 and 2000e-16; and

(5)     constructive discharge.

2

Ms. Watson-Miller seeks compensatory and punitive damages, front pay, back pay, reinstatement, pre- and post-judgment interest, fees, costs, and attorney's fees.  See Docket No. 9.

Ms. Watson-Miller filed the instant motion to compel on May 18, 2016. See Docket No. 28.  Two days later the VA filed a motion for summary judgment in its favor, which motion remains pending before the district court. See Docket No. 30.

The discovery dispute centers around Ms. Watson-Miller's request for all documents related to Equal Employment Opportunity (EEO) claims filed against the VA by four current or former VA employees:

1.      Patricia Niemann, alleging age and disability discrimination in December, 2009, followed by a claim of retaliation in 2011.

2.      Cynthia Gibson, alleging age and gender discrimination in the form of harassment and hostile work environment in April, 2014.

3.      Michael Broadwell alleging in September, 2013, that Dr. Lythgoe discriminated against him on the basis of his disability.

4.      Dr. Janell Simpkins, alleging in April, 2011, that Dr. Waters harassed her and created a hostile work environment.

The VA resists providing this discovery.  See Docket No. 42.

## DISCUSSION

### A.  Meet and Confer Requirement

Rule 37(a)(1) requires the parties to meet and confer to attempt to resolve discovery disputes prior to filing a motion to compel.  See FED. R. CIV. P. 37(a)(1).  In addition, this court's local rules impose a similar requirement.  See DSD LR 37.1.  The parties discussed the discovery dispute in this matter prior to the instant motion being filed.  See Docket No. 28.  The VA does not dispute that Ms. Watson-Miller has satisfied the meet-and-confer requirement.  The court finds this prerequisite satisfied.

### B.  Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)  *Specific Limitations on Electronically Stored Information.*  A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue

4

burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify the conditions for the discovery.

(C)     *When Required.*  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

   (i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

   (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

   (iii)   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C).

A party claiming a privilege as to requested discovery has the burden of

proving the basis for the application of the privilege:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

   (i)     expressly make the claim; and

   (ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A).

If a party fails to respond to a proper request for discovery, or if an

evasive or incomplete response is made, the party requesting the discovery is

entitled to move for a motion compelling disclosure after having made a good

5

faith effort to resolve the dispute by conferring first with the other party.  See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.' " E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v.

6

Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

**C.     The VA's Specific Objections to the Discovery Sought**

   **1.     Privacy**

The VA resists the discovery of all four EEO claims on the grounds of "privacy."  The VA asserts that the EEO files "contain private, confidential information," but never elaborates as to the nature of this sensitive information.  Is it simply social security numbers or date of birth that can be

7

easily redacted?  Or does it consist in detailed narrative descriptions of potentially embarrassing harassment—i.e. the heart of the EEO claim?  The VA also asserts, without any support, that the four EEO claimants "likely had an expectation of privacy when they brought their own EEO claims."  To the contrary, the very act of filing a claim presupposes that others will read the claim in order to evaluate it and respond to it.  The court notes the VA does not assert a claim of privilege as to the requested discovery pursuant to Rule 26.

The parties previously stipulated to the entry of a protective order in this case and the district court entered the order pursuant to that stipulation.  See Docket Nos. 15 & 16.  That protective order specifically covers, among other things, "private information of third parties."  See Docket No. 16 at p.1.  Such information is designated "confidential" and may not be used for any purpose except this lawsuit.  Id. at p. 2.  The persons who may see the information is restricted to the parties, attorneys for the parties, support staff, expert witnesses, and the court and its staff.  Id. at p.3.  Further reproduction of or dissemination of such information is prohibited.  Id.  All persons to whom confidential information is disclosed are bound by the terms of the protective order.  Id.  At the end of the litigation, all confidential information is to be returned to the party who produced it along with any copies and derivative information.  Id. at p. 4.  Alternatively, the information may be destroyed.  Id.

The VA does not acknowledge the existence of this protective order in its brief in opposition to Ms. Watson-Miller's motion to compel.  Therefore, the VA never explains why the protective order is insufficient to protect the privacy

8

interests of the four VA employees whose EEO files are sought.  The court rejects "privacy" as the basis for denying plaintiff's motion to compel.  However, the VA may, if a file is otherwise ordered to be produced, redact from the file social security numbers, dates of birth, home addresses and telephone numbers.

### 2.   Relevancy

The VA also resists Ms. Watson-Miller's request for the four EEO files on grounds of relevancy.  The VA argues that the four other employees who filed EEO claims must be "similarly situated" to Ms. Watson-Miller before she may obtain discovery of the files.  By "similarly situated," the VA argues the other employees "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."  See Docket No. 42 at p. 5.  Because three of the four employees do not meet this asserted test for "similarly situated," the VA urges the court to deny Ms. Watson-Miller's motion to compel on the basis of relevancy.  In support of its position, the VA cites Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 851-52 (8th Cir. 2005), which in turn quoted from Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).[1]

Neither Rodgers nor Clark decided the appropriate scope of "relevancy" for discovery purposes under Rule 26.  Rather, each decision was dealing with the merits of the respective plaintiffs' claims in those cases.  Specifically, under the McDonnell Douglas tripartite test, a plaintiff must first prove a *prima facie*

---

[1] The Rodgers opinion was abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011).

case of discrimination.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  If the plaintiff proves a *prima facie* case, the burden of production only (not the burden of proof), shifts to the employer to articulate a legitimate reason for the adverse employment action it took.  Id.  If the employer satisfies this burden of production, the burden of proof shifts back to the plaintiff to show that the employer's stated reason for its actions is merely a pretext to cover up what was really illegal discrimination.  Id.

One of the ways a plaintiff can show "pretext" is by showing that plaintiff was treated more severely than other similarly situated employees.  Clark, 217 F.3d at 918.  The standard quoted by the VA from both Clark and Rodgers was a discussion of the pretext prong of the McDonnell Douglas test when evaluating the merits of a plaintiff's discrimination claim.  Rodgers., 417 F.3d at 853-54; Clark, 217 F.3d at 918.  In order to show an employer's stated reason for its adverse employment decision was a lie offered in order to cover up illegal discrimination, the plaintiff has a high burden indeed—she must show the other "similarly situated" employee was nearly in the identical situation as plaintiff.

Neither Rodgers nor Clark address the standard for discovery in a discrimination lawsuit.  Discoverable evidence need not be admissible itself if it is reasonably calculated to lead to the discovery of admissible evidence.

Also Ms. Watson-Miller does not seek the four EEO files in this case to show pretext—she does not expect to find that the four employees who filed EEO claims were treated more favorably than she.  Rather, the evidence

10

Ms. Watson-Miller is seeking from these files is evidence that the discrimination she alleges she faced in the VA workplace was common, that other employees encountered the same discrimination, and that the VA's response to allegations of discrimination was inadequate not only in her case, but in others.  This is a far different evidentiary purpose than the "pretext" issue discussed in Rodgers and Clark.

Discovery of other instances of potential discrimination is important in proving a discrimination case.  Rarely will an employer bluntly state or reveal a discriminatory motivation for an employment decision.  Instead, evidence of a discriminatory animus must usually be adduced from circumstantial evidence.  Hence, the relevancy of other instances of discrimination involving other employees may constitute such circumstantial evidence.  However, such discovery must be reasonable in scope both in terms of time frame of other claims of discrimination and in terms of geographic scope.

Ms. Watson-Miller has met her burden of demonstrating the initial relevancy of the four files she seeks.  Each file involves a VA employee from the Sioux Falls, South Dakota, VA facility.  Patricia Nieman, like Ms. Watson-Miller, asserted a claim of age and disability discrimination in 2009, and a claim of retaliation in 2011.  Cynthia Gibson alleged harassment and hostile work environment on the basis of age and gender in 2014.  Michael Broadwell asserted a claim of disability discrimination in 2013 against Kyle Lythgoe. Dr. Janell Simpkins filed a harassment/hostile work environment claim against Dr. Victor Waters in April, 2011.  All the requested EEO claims files are

11

reasonable in scope in terms of the time frame covered because Ms. Watson-Miller filed her EEO claims in 2012.  The requested discovery involves EEO claims emanating from the same VA facility.  Furthermore, each claim bears some overlap with Ms. Watson-Miller's claims herein:  each alleges age discrimination, disability discrimination, or retaliation.

Only one claim, Mr. Broadwell's claim, was asserted against the exact same supervisor and decision-maker as Ms. Watson-Miller's—Kyle Lythgoe. The VA admits that Mr. Broadwell was similarly situated to Ms. Watson-Miller under the demanding standard the VA posits controls discovery herein.

In Dr. Simpkins' case, her supervisor was Dr. Waters.  In the currently pending summary judgment motion, both sides acknowledge that Dr. Waters played a part in Ms. Watson-Miller's claims by denying her request to attend further training on the basis that she might soon retire (i.e. she is old) and, therefore, the VA would not get good value out of investing in further training for her.  The court does not imply that it finds plaintiff's allegations about Dr. Waters true at this point, but the scope of plaintiff's allegations are pertinent to what discovery is relevant.  Dr. Simpkins' claim against Dr. Waters, a common decision-maker in Ms. Watson-Miller's case, is clearly relevant.

The EEO files concerning Patricia Nieman and Cynthia Gibson are a closer question.  Ms. Nieman was a nurse and her supervisors were two women who did not supervise Ms. Watson-Miller or work in her department.

12

Nonetheless, plaintiff alleges a system-wide age discrimination and retaliation animus. This closely parallels Ms. Watson-Miller's allegations herein.

As to Ms. Gibson, the VA does not assert Ms. Gibson was in a totally different department than Ms. Watson-Miller. Rather, the sole basis the VA argues Ms. Gibson's EEO file is irrelevant is that it was filed *after* Ms. Watson-Miller's EEO claim. That one claim preceded or antedated another claim is not reason alone to find it irrelevant if there was in fact discriminatory animus in the workplace.

As stated above, at the discovery stage, it is not necessary for Ms. Watson-Miller to limit her discovery to the standard applicable for proving pretext. All she needs to establish is that the discovery sought is reasonably calculated to lead to the discovery of admissible evidence. She has done that in her motion to compel. The VA has not convinced the court otherwise.

### 3.   **Withdrawn Claims**

After filing a retaliation claim in 2011, Patricia Nieman subsequently withdrew that claim. Similarly, after filing an EEO claim in September, 2013, Mr. Broadwell later withdrew his claim. The VA argues that, because Neiman and Broadwell withdrew their claims, their EEO files cannot be relevant.

The VA does not state why each employee withdrew their claim. The court can imagine many circumstances apart from the merits which might incline a claimant to withdraw his or her claim—a death of a close family member or friend, a relocation to a distant home, financial woes, etc. The mere fact that these claims were withdrawn does not, by itself, show the claims files

13

are irrelevant.  Once Ms. Watson-Miller carried her initial burden of showing the relevance of the requested discovery, the burden was on the VA to show a valid reason for denying the discovery.  The VA has not carried that burden.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the motion to compel [Docket No. 28] filed by plaintiff Rebecca Watson-Miller is granted in part and denied in part as discussed above.  Specifically, the VA shall provide the four EEO files requested to plaintiff's counsel on or before July 28, 2016.  However, the VA may redact information from those files as discussed in the body of this opinion.  Both parties shall treat the EEO files thus provided as confidential under the district court's protective order.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986)./

DATED this 12th day of July, 2016.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge